[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1164 
The appellant, John Dennis Snavely, was convicted of driving without a proper license plate, a violation of § 32-6-51, driving while his license was revoked, a violation of § 32-6-19, Ala. Code 1975, and failing to wear a properly fastened seat belt, a violation of § 32-5B-4, Ala. Code 1975. For the convictions of driving without a current license plate and of failing to wear a properly fastened seat belt, the trial court ordered Snavely to pay court costs and a $25 fine. For the conviction of driving while his license was revoked, the court ordered Snavely to pay court costs and a $50.00 fine, and it sentenced him to 60 days' imprisonment. The balance of his sentence for driving while his license was revoked was suspended and he was placed on probation for one year.
The State's evidence established the following: On December 12, 1997, Don Woody, a Huntsville police officer, stopped Snavely for driving without a proper license plate. Woody testified that attached to the rear of Snavely's car, in the area where a license plate would normally be, was a piece of cardboard with the word "private" written on it. Woody stated that when he stopped Snavely, he was not wearing a seat belt. Additionally, Woody stated that Snavely handed him a homemade identification card with his name and identification number. According to Woody, Snavely had a valid state identification number, and the number indicated that he had never had a valid license in Alabama. Woody cited Snavely for driving while his license was revoked, see § 32-6-19; driving without a proper tag, see § 32-6-51; and failing to wear a proper seat belt, see § 32-5B-4.
We note that Snavely represented himself at trial and on appeal.
 I.
Snavely contends that the trial court erred in convicting him of driving while his license was revoked because, he says, he had never had a valid Alabama *Page 1165 
driver's license. (Snavely's brief to this Court at p. 19.)
Section 32-6-19, Ala. Code 1975, states, in pertinent part:
 "(a)(1) Any person whose driver's or chauffeur's license issued in this or another state or whose driving privilege as a nonresident has been canceled, denied, suspended, or revoked as provided in this article and who drives any motor vehicle upon the highways of this state while his or her license or privilege is canceled, denied, suspended, or revoked shall be guilty of a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), and in addition thereto may be imprisoned for not more than 180 days. In addition to all fines, fees, costs, and punishments prescribed by law, there shall be imposed or assessed an additional penalty of fifty dollars ($50) to be placed in the Traffic Safety Trust Fund and the Peace Officers Standards and Training Fund. Also, at the discretion of the Director of Public Safety, the person's license may be revoked for an additional revocation period of six months."
In Ex parte Snavely, 770 So.2d 1055 (Ala. 2000), Snavely challenged a 1996 conviction for driving while his driving privilege had been revoked. In Snavely, the Supreme Court of Alabama stated:
 "Snavely did not possess a driver's license issued in the State of Alabama. Snavely had at one time possessed a driver's license in the State of Texas. However, he had voluntarily surrendered the Texas license at the time of his arrest in Alabama. Thus, that portion of § 32-6-19, Ala. Code 1975, based on the words `any person whose driver's . . . license issued in this or another state' does not apply to Snavely. Nor does that portion of § 32-6-19 based on the words `or whose driving privilege as a nonresident,' because Snavely was, and is, a resident of Alabama. Therefore, § 32-6-19 does not apply to Snavely. Snavely was not properly charged with driving with a revoked license."
770 So.2d at 1056.
The record indicates that, from the time of Snavely's 1996 conviction to his being charged with the same violation in 1997, Snavely's circumstances had not changed. In this case, when he was stopped for the violations, Snavely was a resident of Alabama and still had not obtained a valid driver's license. (C. 130-32.) Thus, § 32-6-19 is inapplicable, and Snavely was not properly charged with driving while his license was revoked. Therefore, we must reverse Snavely's conviction for driving with a revoked license.
 II.
Snavely contends that the trial court erred in refusing to charge the jury on the definitions of "transport," "transportation," "carrier," "driver," and "chauffeur." [Snavely's brief to this Court at pgs. 11-19, 32-33.) He appears to argue that, because his automobile is not a commercial vehicle, he should not have been convicted of the charged offenses.
Pursuant to § 32-6-1(a), Ala. Code 1975, every person who is not statutorily exempt is required to procure a driver's license before driving upon the highways of Alabama. Although "motor vehicle" is defined clearly by § 32-1-1.1(32), Ala. Code 1975, Snavely focuses on the definition of "vehicle" in § 32-1-1.1(81), Ala. Code 1975. Section 32-1-1.1(81) defines a vehicle as "[e]very device in, upon or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks." Snavely draws particular attention to the use of the word "transported" *Page 1166 
to argue that unless he uses his vehicle as a commercial carrier, he is exempt from the licensing requirement. We disagree.
"It is a well-established principle of statutory interpretation that a statute should be read to give its words their `natural, plain, ordinary, and commonly understood meaning.'" R.T.M. v. State, 677 So.2d 801, 803 (Ala.Cr.App. 1995), quoting Ex parte Etowah County Board of Education, 584 So.2d 528,530 (Ala. 1991). Therefore, we reject Snavely's strained interpretation and we find no error on the part of the trial court.
Additionally, we note that, because Snavely was not charged with, or convicted of, driving without a license, a violation of §32-6-1, Ala. Code 1975, it appears that the requested charges are not relevant to Snavely's case. Thus, Snavely has failed to establish that the alleged error injuriously affected his substantial rights. See Rule 45, Ala.R.App.P.
 III.
Snavely contends that the sections of the "Motor Vehicle and Traffic" portions of the Code with which he was charged impermissibly restrict his constitutional right to travel. (Snavely's brief to this Court at p. 20 24.) Specifically, Snavely appears to argue that the fee charged to obtain or to renew a license and to register a vehicle constitutes a tax upon his right to travel.
Although there is a constitutionally recognized right to interstate travel, that right does not include the unregulated use of the state's highways. While a state cannot penalize a citizen for exercising his right to travel between states, see Jones v.Helms, 452 U.S. 412, 419, 101 S.Ct. 2434, 2240, 69 L.Ed.2d 118
(1981), a state may regulate its public highways and may impose reasonable regulations for securing the safety of the travelers using those highways. Hendrick v. Maryland, 235 U.S. 610, 622,35 S.Ct. 140, 152, 59 L.Ed.2d 385 (1914) (holding that it is an acceptable exercise of a state's police power to require licensing of their drivers and registering of vehicles, and to charge a reasonable fee to implement these requirements). See R.T.M. v.State, 677 So.2d 801, 804 (Ala.R.Crim.P. 1995) (recognizing that the State of Alabama has the authority under its exercise of police power to regulate motor vehicles on public highways and to impose reasonable fees to implement that policy). See alsoLindsey v. Barton, 260 Ala. 419, 70 So.2d 633 (1954); Bozeman v.State, 7 Ala. App. 151, 61 So.2d 604 (1913).
Because it is a privilege to operate a motor vehicle on public roadways, see R.T.M., 677 So.2d at 806, and because licenses, registration, and the accompanying fee are not taxes but an exercise of the state's police powers to ensure safety on the public highways, the regulation and its accompanying fee do not inhibit a person's right to interstate travel. Therefore, we conclude that the State's requirement that he renew or obtain a license and register his vehicle placed no impermissible restrictions on Snavely's right to travel.
 IV.
Snavely maintains that the trial court erred in denying his motion for a new trial on the ground that the implied consent statute, § 32-5-192, Ala. Code 1975, is unconstitutional.[1]
(Snavely's brief *Page 1167 
to this Court at p. 28.) Specifically, he argues that that statute violates his right against self-incrimination.
Section § 32-5-192 states, in pertinent part:
 "(a) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent . . . to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor."
In this case, Snavely was not subjected to any blood, breath, or urine tests, and there were no allegations that he was intoxicated at the time the offenses occurred. Thus, Snavely has failed to establish that the denial of his motion for a new trial probably injuriously affected his substantial rights. Rule 45, Ala.R.App.P.
 V.
Snavely contends that he was not informed of the nature of the charges against him. (Snavely's brief to this Court at p. 30.) Specifically, he argues the trial court erred in denying his motion to compel the prosecution to inform him of the nature of the charged offenses.
On December 12, 1997, Snavely was charged with driving with an expired tag, driving while his license was revoked, and failing to wear a properly fastened seat belt. Snavely was convicted of all three charges in municipal court, and he appealed to the Madison Circuit Court for a trial de novo. On July 26, 1999, the City of Huntsville filed complaints alleging that, on December 12, 1997, Snavely had violated § 32-6-51, § 32-6-19, and § 32-5B-4, Ala. Code 1975. The City filed a motion to consolidate these charges; that motion stated the specific offenses charged against Snavely, and Snavely was served with the City's motion to consolidate. Snavely filed numerous pro se pretrial motions addressing the charges against him. Before trial on January 5, 2000, the trial court informed Snavely of the charges, and Snavely indicated that he understood the nature of the charges against him and he pleaded not guilty.
"[A] defendant has the right to be apprised of the nature and cause of the accusation against him by written complaint." Cityof Foley v. Collier, 586 So.2d 1011, 1013 (Ala.Cr.App. 1991), citing Jefferson v. City of Birmingham, 399 So.2d 932, 933
(Ala.Cr.App. 1981). However, where a defendant is fully informed of the proceedings against him in municipal court and he appeals for a trial de novo in circuit court, a complete statement of the charges is not necessary in circuit court. City of Foley v.Collier, supra, citing Jefferson v. City of Birmingham, supra. Alabama law requires that the trial court advise the accused of the nature and substance of the charge against him. Goolsby v.State, 492 So.2d 635 (Ala.Cr.App. 1986), citing Thomas v. State,255 Ala. 632, 53 So.2d 340 (Ala. 1951).
In this case, Snavely was issued traffic citations for the charged offenses, and he was convicted of those offenses in municipal court. Additionally, Snavely filed numerous pretrial motions in the circuit court addressing the charged offenses. The circuit court arraigned Snavely before trial and Snavely indicated that he understood the charges against him. Furthermore, the charged offenses were "self-explanatory and so simple in meaning that it *Page 1168 
can be expected or assumed that a layperson would understand them."Alexander v. State, 488 So.2d 41, 43 (Ala.Cr.App. 1986) (stating that, in a guilty plea proceeding where the indictment clearly set forth the elements of the offense, the defendant was able to understand the nature of the charges against him). Given that Snavely was fully informed of the charges against him before trial, the trial court did not err in denying Snavely's motion to compel the prosecution to inform him of the charges against him.
 VI.
Snavely maintains that the trial court erred in admitting into evidence a copy of his driving history (State's Exhibit # 3). (Snavely's brief to this Court at p. 30.) Specifically, he appears to argue that the exhibit was not properly authenticated and that it was inadmissible hearsay.
Given that we are reversing Snavely's conviction for driving while his license was revoked, see Part I of this opinion, we need not address whether the trial court erred in admitting a copy of his driving history concerning the status of his license. Nevertheless, because Snavely was also convicted of driving without a proper license plate, and of failing to wear a properly fastened seat belt, we will address whether the admission of his driving history was error.
The most common method of proving a driving offense is through the admission of a certified copy of the defendant's driving history as maintained by the State Department of Public Safety. See Goodwin v. State, 728 So.2d 662, 670 (Ala.Cr.App. 1998). A "certified copy" is "[a] duplicate of an original . . . document, certified as an exact reproduction usu[ally] by the officer responsible for issuing or keeping the original." Black'sLaw Dictionary 337 (7th ed. 1999). "`Certified copies of public records, signed and certified by the officer who has lawful custody, are properly authenticated and admissible into evidence.'" Bombailey v. State, 580 So.2d 41, 45 (Ala.Cr.App. 1990), quoting Bentley v. State, 450 So.2d 197, 199 (Ala.Cr.App. 1984).
A computer printout of a defendant's driving history, certified by the official having custody of the driving records in the State Department of Public Safety and showing the status of the defendant's driving history on the date in question, is admissible under the public records exception to the hearsay rule.Farmer v. Town of Daphne, 782 So.2d 808 (Ala.Cr.App. 2000), citing Rule 803(8), Ala.R.Evid. and § 12-21-35, Ala. Code 1975.
In this case, the official custodian of records for the Alabama Department of Public Safety, Perry B. Hardy, signed the copy of Snavely's driving history stating that the computer printout was a true and correct copy. Additionally, a notary public certified that Perry B. Hardy was the official custodian of records for the Alabama Department of Public Safety. Given that Snavely's driving history was a public record and was properly certified, the document was properly authenticated and that it was properly admitted under the public records exception to the hearsay rule. Furthermore, Snavely failed to establish that the introduction of the driving record probably injuriously affected his substantial rights. Rule 45, Ala.R.App.P. Thus, the trial court did not err to reversal in admitting the City's exhibit into evidence.
 VII.
Snavely contends that the trial court should have permitted him to subpoeana witnesses. (Snavely's brief to this Court at p. 30.) Specifically, he argues that he should have been permitted to examine the Director of the Alabama Department *Page 1169 
of Public Safety, the Director of the Department of Transportation, the Speaker of the House, and the Speaker of the Senate. In a pretrial proceeding, Snavely indicated that he wished to subpoena the witnesses because he wanted them to explain how his license had been revoked when he had never been issued a license. Because we reversed Snavely's conviction for driving with a revoked license, see Part I of this opinion, we need not address this issue.
 VIII.
Snavely maintains that the Madison Circuit Court did not have jurisdiction to hear his case. (Snavely's brief to this Court at p. 44.) Specifically, in his motion to dismiss, which the trial court denied, Snavely appeared to argue that the trial court did not have jurisdiction because, he says, he is not a citizen of the United States or of Alabama, and he argued that he was a "sovereign individual" and did not intend to "give any jurisdiction to [the] Honorable Court." (C. 1.)
A person who is not a citizen of the United States or a resident of Alabama may be prosecuted in the jurisdiction where he committed a crime. See Cano v. State, 543 So.2d 724 (an illegal alien who resided in Florida was prosecuted and convicted in Dothan, Alabama for trafficking in cocaine). "`Jurisdiction to prosecute or convict for crime comes solely from the criminal law, and depends in no degree upon the consent of the litigant, whether state or citizen, sovereign or subject.'" Dissent to a 5-4 decision in City of Dothan v. Holloway, 501 So.2d 1136, 1155 (Ala. 1986), quoting dissent in McKinstry v. City of Tuscaloosa,172 Ala. 344, 54 So. 629 (1910).
The record indicates that the offenses occurred in Madison County, Alabama. Thus, the Madison Circuit Court had jurisdiction of Snavely's case.
Based on the foregoing, the judgment of the trial court is affirmed as to the convictions for driving without a proper license plate and for failing to wear a properly fastened seat belt. The judgment of the trial court is reversed as to the conviction for driving with a revoked license, and the case is remanded for entry of an order vacating the conviction of driving with a revoked license.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
[1] Based on the facts of this case, Snavely did not have standing to make this argument. However, the State did not raise a claim at trial or on appeal that Snavely lacked standing to challenge the constitutionality of § 32-5-192, Ala. Code 1975. Thus, the State waived any claim that Snavely lacked standing. See State v. Ivey, 709 So.2d 502, 507 (Ala.Cr.App. 1997).